**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORY DEAN RUNGE,

        Petitioner,

  vs.

M.S. EVANS, Warden,

        Respondent.
                                /

No. C 06-2509 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted based on petitioner's cognizable claim for relief. Respondent filed a motion to dismiss the petition as untimely, which was denied. Thereafter, respondent filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has filed a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

      Petitioner was charged by information in Del Norte County Superior Court with four counts of indecent exposure, one count of making a criminal threat and one count of possession of a weapon in prison. The information was later amended to drop one of the counts of indecent exposure and to add allegations of six prior convictions. Pursuant to a plea agreement, petitioner pled guilty to the charge of possession of a weapon in prison in exchange for a two-year sentence and the other charges and allegations were dismissed. On January 17, 2002, the trial court sentenced him to a term of two years in state prison, to be served consecutively to the twenty-five years to life sentence he was already serving.

He did not appeal this conviction, but instead filed a series of unsuccessful habeas petitions in all three levels of the California courts.

Petitioner does not dispute the following facts, which are derived from the preliminary hearing transcript.[1]  Respondent Ex. 2A.  On November 23, 2000, while housed in the mental health ward of Pelican Bay State Prison ("PBSP"), petitioner exposed himself to Correctional Officer Peeples by turning the lights on in his cell and masturbating while facing her.  Petitioner ignored her orders for him to stop.  On November 28, 2000, and again on December 2, 2000, petitioner exposed himself in a similar manner to another female correctional officer, Officer Anderson, and also ignored her orders to stop.  Again, six days later, petitioner exposed himself in a similar manner to another female officer, Officer Valdez.  When she ordered him to stop, he said, "Fuck you, you fucking bitch, you cunt," and told her that he had a razor blade that he would use on her.  Following the threat on Valdez, petitioner was placed in a holding cell.  While in the holding cell, he cut his arms with a razor blade and then showed the cuts and the bloody razor to a nearby correctional officer.  Petitioner complied with the officer's order to drop the razor on the floor outside the holding cell, and a nurse arrived to bandage petitioner's arms.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v.*

---

[1] The state court opinions do not set forth a detailed recitation of the facts.

2

*Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that his attorney was ineffective in not adequately investigating his mental condition and in letting him plead guilty when he lacked the mental capacity to make a knowing and voluntary plea.

A habeas petitioner challenging a conviction on grounds of ineffective assistance of counsel must demonstrate two things. First, he must show that his lawyer's representation

3

was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 687-88 (1984). Second, he must also show that the deficient legal representation prejudiced his defense, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. See id. at 697.

On July 5, 2001, after the charges were filed against petitioner, the trial court granted defense counsel's request to appoint a forensic psychologist to conduct a psychological evaluation of petitioner. Dr. Jenesky evaluated petitioner on October 12, 2001. In his report, Dr. Jenesky diagnosed petitioner with several mental disorders: severe cognitive disorder secondary to substantial substance abuse, polysubstance dependence, psychotic disorder with delusions due to substantial substance abuse, antisocial personality disorder, borderline personality disorder, suicidal ideation and serious impairment in social functioning. Petition ex. B at 4-5. He concluded, however, that petitioner "does not fit criteria for an evaluation for a finding of incompetency, nor criteria for a plea of not guilty by reason of insanity." Id. at 5. Dr. Jenesky noted that petitioner admitted to the weapon possession, and Dr. Jenesky suggested a plea bargain to that charge and transfer to a new facility for additional treatment, which he noted had been inadequate at PBSP. Id. at 2, 4, 5.

At the entry of plea hearing, on January 17, 2002, defense counsel stated that although petitioner was "a little slow and sometimes a bit distracted . . . from the real issue," he was "not incompetent" to make his decision about the plea agreement. Respondent Ex. 2B at 11. The trial court then asked if petitioner understood the terms of the plea bargain and the rights he was waiving by pleading guilty. Id. at 12-16. Petitioner answered all of the court's questions in the affirmative, indicated that he understood the terms of the plea bargain and the rights he was giving up, asked certain questions, assured the court that he

4

was of sound mind and able to think clearly, admitted the truth of the weapon charge, and pleaded guilty to that charge. *Id.* As provided in the plea agreement, all other charges and enhancements were dismissed, and petitioner was sentenced to the lower term of two years.

Petitioner argues that defense counsel did not adequately investigate his mental health, and should have done so in order to have him declared incompetent and to develop an insanity defense. A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. *Strickland* directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 491). Counsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client. *Avila v. Galaza*, 297 F.3d 911, 924 (9th Cir. 2002).

Here, counsel did investigate petitioner's mental capacity. In particular, he obtained court appointment of a Dr. Jenesky, a forensic psychologist, to evaluate petitioner. Dr. Jenesky's qualifications included ten years of training and experience in providing forensic psychological evaluations, including three years providing numerous such evaluations for the courts and the Board of Prison Terms. Dr. Jenesky's examination included an interview of petitioner in person, and a review of his central and medical files from the prison.

Petitioner argues that counsel should not have accepted Dr. Jenesky's evaluation but should have sought the opinion of "two or three doctors." However, an attorney is entitled to rely on the opinions of mental health experts in deciding whether to pursue an insanity or diminished capacity defense. *Williams*, 384 F.3d at 611 (given that mental-health experts' evaluation of defendant did not support a mental-state defense, counsel's decision not to investigate further or ultimately pursue the defense was a reasonable strategic choice). There is no reasonable basis for counsel to have questioned Dr.

5

Jenesky's conclusion in this case that petitioner was competent and did not qualify for an insanity defense.  As described above, Dr. Jenesky was amply qualified and experienced in conducting such evaluations, and he had both interviewed petitioner and reviewed petitioner's records.  The fact that petitioner had certain mental heath problems did not mean that those problems were of the type that met the legal definition of insanity or incompetence, the latter of which requires a showing that petitioner was unable "to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him."  *Godinez v. Moran*, 509 U.S. 389, 396 (1993); s*ee DeKaplany v. Enomoto*, 540 F.2d 975, 983-985 (9th Cir. 1976) (en banc); *Schoeller v. Dunbar*, 423 F.2d 1183, 1184-85 (9th Cir. 1970) (petitioner competent despite suicidal tendencies and mental illness).  Dr. Jenesky's report made it clear that he had understood petitioner's mental health problems and accounted for them before reaching his conclusion that while petitioner was mentally ill and needed treatment, petitioner's mental health problems did not meet the legal definition of incompetency or insanity.  Absent a reasonable basis for questioning Dr. Jenesky's investigation and analysis of petitioner's mental capacity, counsel could reasonably rely on Dr. Jenesky's conclusions, and cannot be faulted for deciding not to investigate petitioner's mental state further without any basis to hope for a different result and instead obtaining the plea agreement with terms that were, under the circumstances, very favorable to petitioner.

Petitioner also claims that counsel was deficient for allowing him to plead guilty because petitioner asserts that he did not have the mental capacity to understand the charges and consequences of his guilty plea.  To succeed on this claim, petitioner would first have to show that he was in fact incompetent to plead guilty.  *United States v. Howard*, 381 F.3d 873, 881 (9th Cir. 2004) (no ineffective assistance of counsel because lack of evidence that defendant was incompetent to plead guilty as a result of psychotropic drugs).  The competency standard to plead guilty is the same as that to stand trial. Doe v. Woodford, 508 F.3d 563, 571 (9th Cir. 2007) (finding insufficient evidence of mental illness

to establish defendant's incompetence).

The competency determination, as to whether a defendant is capable of understanding the proceedings and assisting counsel, "is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997). The prior medical opinion in this case was that petitioner was competent. In addition, petitioner's demeanor during the hearing did not undermine this conclusion – he indicated that he understood the charges against him, the rights he was giving up, and the waiver of his rights. Resp. Ex. 2B at 12-16. He also asked several questions to clarify the effect of his plea bargain, such as whether the two-year sentence he would receive would remain in effect if his existing sentence was overturned, whether he would continue to get time credits, and whether the conviction would count as a "strike." *Id.* at 12-14. He further admitted to the crime and recounted the facts of the offense in a rational and coherent fashion, *id.* at 14-16, and finally affirmed that he was of sound mind, *id.* at 16. Nothing in the plea transcript evinces erratic, irrational or mentally incompetent behavior by petitioner. To the contrary, his detailed questions about the consequences of his plea, as well as his affirmations that he understood the plea and its consequences, and indicated a rational understanding of the proceedings and the consequences of his plea.

Petitioner claims that he had "decompensated" during the time between the psychiatric evaluation and the plea hearing three months later. The only basis for this assertion is his allegation that in September 2000 he had an "emotional outburst" that was characterized by prison officials as "disrespect without potential for violence." That outburst, however, occurred before the charged incidents in this case, and long before his psychiatric evaluation in October 2001. In any event, an emotional outburst, while perhaps consistent with petitioner's various mental health problems, hardly establishes irrationality or a lack of comprehension skills.

Petitioner also argues that defense counsel did not discuss a "potentially

meritorious" insanity defense with him based on Dr. Jenesky's report prior to the plea hearing. There were no grounds for such a discussion however, as the report did just the opposite of providing a potential basis for the insanity defense insofar as it concluded that petitioner was *not* a candidate for such a defense.

Lastly, petitioner cannot establish prejudice from counsel's performance. To show prejudice from his plea agreement, petitioner would have to show a reasonable probability that but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 29 (1985). Petitioner has submitted no evidence indicating that any further investigation by counsel, or any further evaluations by other psychological experts, would have resulted in a different conclusion than the one Dr. Jenesky reached, that petitioner was competent and not qualified for an insanity defense. Moreover, the plea bargain in this case provided petitioner with a very substantial benefit. Multiple counts of indecent exposure and threatening a guard, as well as enhancements for his prior strike convictions, were all dismissed in exchange for a lower-term sentence of two years on only one of the charges against him. Given the lack of evidence that petitioner could have avoided trial and conviction based on incompetency or insanity, as well as the essentially unchallenged evidence of petitioner's having committed the charged offenses, it is not reasonably probable that petitioner would have exposed himself to a much more substantial sentence by foregoing the plea agreement and going to trial.

In sum, petitioner has failed to establish either that trial counsel was ineffective, or that he was prejudiced by counsel's investigation into his mental state or in allowing him to plead guilty under very favorable terms of a plea bargain. Accordingly, the state courts' denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law, and petitioner is not entitled to habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 2, 2009.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\RUNGE509.RUL.wpd